MICHAEL LEHNERS, ESQ.
429 Marsh Ave.
Reno, Nevada 89509
Nevada Bar Number 003331
(775) 786-1695
email michaellehners@yahoo.com
Attorney for Plaintiffs
James Gray and Paula Belben

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

oOo

JAMES GRAY, an individual;  Case No.
PAULA BELBEN, an individual,

Plaintiff,

VERIFIED COMPLAINT

vs.

ALEXXA GOODENOUGH, an
individual, NATIONAL LEASE
PURCHASE LLC, a Colorado
Limited Liability Company;
MARIO GARCIA, an individual,

Defendant.

_____/

Plaintiffs, James Gray and Paula Belben, file the following complaint and allege as follows:

PARTIES

1.  Plaintiff, James Gray is a resident of Washoe County, Nevada.

2.  Plaintiff, Paula Belben is a resident of Washoe County, Nevada.

3.  On information and belief, Defendant Alexxa Goodenough is a resident of Sacramento, California.

1

4.    On information and belief, Defendant National Lease Purchase, LLC is a Colorado registered limited liability company.

5.    On information and belief, Defendant Mario Garcia is a resident of San Diego, California.

## VENUE AND JURISDICTION

6.    This Court has subject matter jurisdiction over each Defendant pursuant to 28 U.S.C. §1332, because the amount in controversy (and the object of the controversey) exceeds $75,000.00 and because there exists complete diversity between Plaintiffs and Defendants.

7.    Specifically, the  Defendants herein were involved in either a joint venture, partnership or other principal-agent relationship with respect to the contracts for deed concerning the real property located at 5545 Corina Circle, Sun Valley, Nevada, APN 085-631-41.

8.    Venue is appropriate pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim(s) occurred, or a substantial part of property that is the subject of the action, is situated in Washoe County, Nevada.

## GENERAL ALLEGATIONS

9.    Defendant Goodenough is shown as being the owner of the Corina Circle property.

10.    On February 3,  2016 Defendant Goodenough executed a deed of trust on the Corina Circle property in favor of James Harloff in order to secure the sum of $145,000. This deed of trust was recorded in the Washoe County Recorder's Office on February 5, 2016 as Document No. 4557805.

2

11.   On information and belief, neither James Harloff nor any subsequent assignees have executed a deed of reconveyance or other evidence of satisfaction of this deed of trust.

13.   August 19, 2022 Defendant Goodenough and Defendant National Lease Purchase LLC executed a contract for deed lease purchase agreement with respect to the Corina Circle property (Herein "National Lease Agreement"). A true and correct copy of this National Lease Agreement has been attached as Exhibit "1".

14.   The National Lease Agreement was signed by both Defendant Goodenough and National Lease Purchase LLC.

15.   Also on August 19, 2022 James Gray and Paula Belben signed a contract for deed with respect to the Corina Circle Property (Herein "Gray-Belben Agreement"). A true and correct copy of this Gray-Belben Agreement has been attached as Exhibit "2".

16.   The National Lease Agreement contains the following provisions:

    A.   Page 1 identifies Alexxa Goodenough as "the Seller" and National Lease Purchase LLC collectively as "the "Purchaser")

    B.   Paragraph 1 says in relevant part that the Seller, in consideration of $525,000 conveys the lands and property located at 5545 Corina Cir, Sun Valley, NV 89433 to the Purchaser.

    C.   Paragraph 2 sets forth the down payment and monthly payments with respect to the Purchaser's obligation to pay the $525,000.

D.    Paragraph 16 (Assignment or Sale of the Premises) says "The Purchaser may sell, assign, transfer, convey, encumber, or otherwise deal with any interest in the Premises."

E.    Paragraph 17 (Deed and Evidence of Title) says "Upon payment of the full Purchase Price, including all taxes, assessments, interest, and other charges due to the Seller, the Seller agrees to deliver to the Purchaser, within a reasonable amount of time, a Warranty Deed to the Premises in the name of the Purchaser, free and clear of all liens and encumbrances."

F.    Paragraph 19 deals with where notices are to be sent under the Agreement. Notice to the Purchaser states "If to the Purchaser: National Lease Purchase will Assign to James Gray of 300 Westbrook Ln, Reno, NV, and Paula Belben of 321 Lucky Ln, Reno, NV.

G.    Paragraph 20 (Conveyance or Mortgage by Seller says "The Seller reserves the right to encumber the Premises with a mortgage. The Seller agrees to meet the obligations due under the mortgage and to provide proof of the same to the Purchaser upon the written demand of the Purchaser."

H.    Paragraph 21 (Conveyance or Mortgage by Seller says "The Seller reserves the right to convey their interest in the Premises, subject to this Agreement. Such conveyance will not be cause for termination of this Agreement."

4

I.   Paragraph 35 says "Occupancy will be as soon as seller has personal items removed from main house."

17.   The Gray-Belben Agreement contains the following provisions:

A.   Page 1 identifies Alexxa Goodenough as "the Seller" and Mr. Gray and Ms. Belben collectively as "the "Purchaser(s)"

B.   Paragraph 1 says in relevant part that the Seller, in consideration of $440,000 conveys the lands and property located at 5545 Corina Cir, Sun Valley, NV 89433 to the Purchaser.

C.   Paragraph 2 sets forth the down payment and monthly payments with respect to the Purchaser's obligation to pay the $440,000.

D.   Paragraph 16 (Assignment or Sale of the Premises) says "The Purchaser **may not** sell, assign, transfer, convey, encumber, or otherwise deal with any interest in the Premises without the written consent of the Seller." (Emphasis supplied).

E.   Paragraph 17 (Deed and Evidence of Title) says "Upon payment of the full Purchase Price, including all taxes, assessments, interest, and other charges due to the Seller, the Seller agrees to deliver to the Purchaser, within a reasonable amount of time, a Warranty Deed to the Premises in the name of the Purchaser, free and clear of all liens and encumbrances."

F.   Paragraph 19 deals with where notices are to be sent under the Agreement. Notices to the purchaser are to be sent to Mr. Gray and Ms. Belben.

G.   Paragraph 20 (Conveyance or Mortgage by Seller says "The Seller reserves the right to encumber the Premises with a mortgage. The Seller agrees to meet the obligations due under the mortgage and to provide proof of the same to the Purchaser upon the written demand of the Purchaser."

H    Paragraph 21 (Conveyance or Mortgage by Seller) says "The Seller reserves the right to convey their interest in the Premises, subject to this Agreement. Such conveyance will not be cause for termination of this Agreement."

I.   Paragraph 33 (Additional Clauses) says "$30,000 dollars due upon contract signing to Assignor National Lease Purchase and funds to held until by Assignor until inspection of property by seller. The balance of $60,000 will be due by Oct 31, 2022."

J.   Paragraph 34 (Additional Clauses) says "Assignor will be making the following repairs to the home; Removing of all personal items (including vehicles and vessels) from interior and exterior or property, interior touch up paint, fixing of kitchen cabinets and drawers that are broken, repair exterior skirting, toilet replacement, interior wall hole patching and yard trash removal. Inspection to done

6

for repairs on August 30th. $30,000 earnest money is refundable if repairs are not completed."

K.   The signature line identifies Alexxa Goodenough as the seller, but above her name the phrase "Assignor of Contract" is written.

J.   The docusign signature of Ms. Goodenough is different in the Gray-Belben agreement than it is in the National Lease Agreement.

18.   On or about November 22, 2022 Defendant Goodenough filed suit in the Second Judicial District Court of Washoe County, Nevada against National Lease Purchase, LLC and Mario Garcia. See *Goodenough vs. National Lease Purchase, LLC.*, Case No. CV22-01895. A copy of this verified complaint has been attached as Exhibit "3". That complaint attached a copy of the National Lease Agreement as an exhibit. This National Lease Agreement has been attached to this complaint as Exhibit "1".

19.   Neither Plaintiff James Gray nor Paula Belben were joined in this lawsuit, nor were they served with a copy of the complaint.

20.   Instead, on or about February 23, 2022 the Plaintiffs received a letter from the Jepsen & McMenomy lawfirm addressed to "Tenants of 5545 Corina Circle". The letter stated that Ms. Goodenough is in litigation with National Lease Purchase. The letter further stated that "This serves a notice under NRS 40.251 for you to vacate the property." A copy of this letter has been attached as Exhibit "4".

21.   On or about February 27, 2022 Ms. Belben spoke with attorney McMenomy. Ms. McMenomy gave Ms. Belben the case number in reference to the Goodenough litigation.

22.   On  or  about  March  1,  2022  the  Plaintiffs  met  with undersigned  counsel  who  provided  them  with  a  copy  of  the  Goodenough complaint  against  National  Lease  Purchase.

23.   In  her  verified  complaint,  Ms.  Goodenough  makes  the following  allegations.

A.   On  or  about  August  19,  2022,  Goodenough  entered  into  a contract  with  National  Lease  Purchase  entitled  Contract  for Deed  Lease  Purchase  Agreement  (¶11  of  complaint)

B.   Goodenough  was  to  sell  the  Property  to  National  Lease Purchase  who  would  then  rent  the  Property  out  to  qualified renters  (¶14  of  complaint).

C.   Before  the  National  Lease  Agreement  was  signed,  Defendant Garcia  made  false  and/or  misleading  representations  to Goodenough  (¶16  of  complaint).

D.   These  false  representations  included  (1)  the  facts  that  National Lease  Purchase  was  licensed  and  qualified  to  do  business  in the  State  of  Nevada  (¶17  of  complaint);  (2)  Goodenough  would be  permitted  to  approve  any  and  all  renters  before  they entered  into  a  lease  and  began  residing  on  the  Property  (¶18 of  complaint);  (3)  Goodenough  would  be  permitted  to  keep  her belongings  in  one  or  both  of  the  detached  garages  on  the Property  and  that  she  would  be  able  to  access  the  garages  at any  time  (¶19  of  complaint);  (4)  Any  tenants  on  the  Property would  be  unable  to  access  the  two  detached  garages  on  the Property  which  currently  contain  Goodenough's  belongings (¶20  of  complaint);  (5)  all  leases  would  not  permit  pets  to reside  at  the  Property.  (¶21  of  complaint);  and  (6)  Garcia

8

would hire a moving company to move her belongings into the detached garage (¶22 of complaint).

E.   Neither National Lease Purchase nor Garcia paid Goodenough the Down Payment in the amount of Thirty Thousand and No/100 Dollars ($30,000.00) upon execution of the Agreement ("Down Payment"). As of the filing of this Complaint, Goodenough has still not received the Down Payment required by the Agreement (¶24 of complaint).

F.   In or around September 2022, Defendant National Lease Purchase, through Garcia, moved renters into the Property without first notifying or receiving approval from Goodenough (¶26 of complaint).

G.   On or around October 5, 2022, four days after the first monthly installment of Two Thousand Four Hundred Dollars ($2,400.00) was due, Goodenough received a "pro-rated rent" payment in the amount of One Thousand Nine Hundred and Ninety-Five Dollars ($1,995.00) via wire transfer to her bank account (¶31 of complaint).

H.   On or about October 25, 2022, Goodenough, through her counsel sent National Lease Purchase a Notice of Default, pursuant to the Agreement, regarding the lack of payment as well as detailing Garcia's misrepresentations (¶35 of complaint).

I.   The Notice of Default was returned as undeliverable on or about November 7, 2022 (¶37 of complaint).

24.   Ms. Goodenough's verified contained nine claims for relief. Those were (1) Breach of Contract; (2) Breach of the Implied Covenant of

9

Good Faith and Fair Dealing; (3) Fraudulent Misrepresentation; (4) Constructive Fraud[1]; (5) Unjust Enrichment; (6) Alter-Ego; (7) Violation of NRS 76.100; (8) Declaratory Relief; and (9) Declaratory Relief.

25.    According to the prayer for relief, the declaratory relief sought is for finding the Agreement between Plaintiff and National Lease Purchasing is voidable by Plaintiff based upon fraudulent inducement of the contract.

26.    According to the prayer for relief, the injunctive relief sought is for a temporary restraining order and a preliminary and permanent injunction enjoining Garcia and/or National Lease Purchasing from renting the Property to any and all renters.

27.    Pursuant to the Gray-Belben agreement, the Plaintiffs were to make a down payment of $60,000 and monthly installments of $1,995 until the purchase price is paid in full.

28.    Paragraph two of the Gray-Belben agreement does not designate to whom the payments are to be made.

29.    Paragraph 33 required the Plaintiffs to pay $30,000 of the down payment to National Lease Purchase.

30.    Pursuant to the Pursuant to the Gray-Belben agreement, the Plaintiffs made the following payments on the following dates:

| Date | Amount |
|---|---|
| 8/19/22 | $30,000.00 |
| 10/3/22 | $1,995.00 |
| 10/17/22 | $20,000.00 |
| 10/26/22 | $10,000.00 |
| 10/31/22 | $1,995.00 |
| 11/30/22 | $1,995.00 |
| 12/28/22 | $1,995.00 |
| 1/30/23 | $1,995.00 |
| 1/27/23 | $1,995.00 |

[1] The complaint does not list a fourth or fifth claim for relief. It goes from the third claim for relief to the sixth claim for relief.

Total------------------------------------------------------------------------------$71,970.00

31.    No notice of default (pursuant to ¶10 of the Gray-Belben Agreement) was ever sent to the Plaintiffs by anyone.

FIRST CLAIM FOR RELIEF

**Declaratory  Relief- Agency  Actual  Authority**

32.    Plaintiffs  incorporate  the  allegations  contained  in  the preceding  paragraphs  as  though  set  forth  in  full  herein.

33.    The  National  Lease  Agreement  identifies  National  Lease Purchase LLC as the purchaser of the Corina property.

34.    The  National  Lease  Agreement  says  National  Lease  Purchase LLC  may  sell,  assign,  transfer,  convey,  encumber,  or  otherwise  deal  with any  interest  in  the  Premises.

35.    The  National  Lease  Agreement  says  Ms.  Goodenough  shall deliver  a  deed  upon  payment  in  full  of  the  purchase  price.

36.    The  National  Lease  Agreement,  under  ¶19,  says  in  relevant part  regarding  notices,  that  If  to  the  Purchaser:  National  Lease  Purchase LLC  will  Assign  to  James  Gray  of  300  Westbrook  Ln,  Reno,  NV,  and  Paula Belben  of  321  Lucky  Ln,  Reno,  NV."

37.    The  National  Lease  Agreement  reserved  the  right  for Defendant  Goodenough  to  encumber  the  Corina  property  at  her discretion  and  for  her  benefit  on  the  condition  that  she  meets  the obligations  due  under  the  mortgage  and  to  provide  proof  of  the  same  to the  Purchaser  upon  the  written  demand.

38.    National  Lease  Purchase  LLC  negotiated  with  the  Plaintiffs their  purchase  of  the  Corina  premises  for  the  sum  of  $440,000.

39.    National  Lease  Purchase  LLC  prepared  the  Gray-Belben contract  allowing  Plaintiffs  to  buy  the  Corina  property  wherein  they would  receive  title  when  the  obligation  was  paid  in  full.

1 1

40. An agency relationship is formed when one person has the right to control the performance of another.

41. Defendant Goodenough signed the National Lease Agreement which granted express authority for National Lease Purchase, LLC to sell, assign, transfer, convey, encumber, or otherwise deal with any interest in the Premises.

42. Under the National Lease Agreement Defendant Goodenough retained the right to control the performance of National Lease Purchase, LLC by (1) Giving National Lease Purchase the right to sell, assign, transfer, convey, encumber, or otherwise deal with any interest in the Premises; (2) Paragraph 19 of the National Lease Agreement says that National Lease Purchase, LLC will Assign to James Gray and Paula Belben; (3) Reserving the right for Defendant Goodenough to encumber the Corina property at her discretion and for her benefit.

43. An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.

44. At all times mentioned herein, the National Lease Agreement's terms described above allowed Defendant National Lease Purchase, LLC. to freely market, sell, assign, transfer, convey or encumber the property.

45. When National Lease Purchase LLC negotiated and executed the Gray-Belben Agreement, it did so as Defendant Goodenough's agent, binding her to the terms of the Gray-Belben Agreement.

46. Plaintiffs are entitled to declaratory relief that at the time the Gray-Belben Agreement was executed, National Purchase LLC acted

as Defendant Goodenough's agent thereby binding her to the terms of the agreement.

47. Plaintiffs are entitled to declaratory relief that the Gray-Belben agreement is a valid contract of sale for the sale of the Corina property, and that they are entitled to have the Corina property deeded to them by Defendant Goodenough upon completion of performance under the Gray-Belben agreement.

SECOND CLAIM FOR RELIEF

**Declaratory Relief- Agency Apparent Authority**

48. Plaintiffs incorporate the allegations contained in the preceding paragraphs as though set forth in full herein.

49. The August 19, 2022 Gray-Belben Agreement (1) Identifies Defendant Goodenough as the Seller; (2); States that the Plaintiffs may not sell, assign, transfer, convey, encumber, or otherwise deal with any interest in the Premises without the written consent of the Seller; (3) States that when the Plaintiff pay the contractual obligation, Defendant Goodenough shall deliver a warranty deed for the property to Plaintiffs; (4) States that if Defendant Goodenough conveys an interest in the premises subject to this agreement, the conveyance will not terminate the Plaintiffs' rights under the agreement; (5) Directs the Plaintiffs to pay one half of the down payment, ($30,000) to Defendant National Lease Purchase, LLC who will hold the funds until inspection of the property by Defendant Goodenough; (6) Identifies Defendant National Lease Purchase, LLC as an assignor; (7) Identifies Defendant Goodenough above her signature line as assignor.

50. A party claiming an agency relationship based on apparent authority must prove (1) that he subjectively believed that the agent

1 3

had authority to act for the principal and (2) that his subjective belief in the agent's authority was objectively reasonable.

51. In this case, the Washoe County Recorder's website indicates Defendant Goodenough is the titled owner of the Corina property.

52. When Defendant National Lease Purchase, LLC negotiated the sale of the Corina property to the Plaintiffs and presented them with the Gray-Belben agreement, the Plaintiffs subjectively believed Defendant National Lease Purchase, LLC had the authority to sell the property and act of behalf of Defendant Goodenough.

53. The subjective belief of Defendant National Lease Purchase, LLC's apparent authority was reasonable based upon the content of the Gray-Belben purchase agreement, the relevant terms of which are summarized above.

54. Plaintiffs are entitled to declaratory relief that at the time the Gray-Belben Agreement was executed, National Purchase LLC acted as Defendant Goodenough's agent thereby binding her to the terms of the agreement.

55. Plaintiffs are entitled to declaratory relief that the Gray-Belben agreement is a valid contract of sale for the sale of the Corina property, and that they are entitled to have the Corina property deeded to them by Defendant Goodenough upon completion of performance under the Gray-Belben agreement.

THIRD CLAIM FOR RELIEF
**Declaratory Relief - Joint Venture**

56. Plaintiffs incorporate the allegations contained in the preceding paragraphs as though set forth in full herein.

57. The August 19, 2022 National Lease Agreement (1) Gave National Lease Purchase the right to sell, assign, transfer, convey,

14

encumber, or otherwise deal with any interest in the Premises; (2) Said that National Lease Purchase, LLC will Assign to James Gray and Paula Belben; (3) Reserves the right for Defendant Goodenough to encumber the Corina property at her discretion and for her benefit.

58.   The August 19, 2022 Gray-Belben Agreement (1) Identifies Defendant Goodenough as the Seller; (2); States that the Plaintiffs may not sell, assign, transfer, convey, encumber, or otherwise deal with any interest in the Premises without the written consent of the Seller; (3) States that when the Plaintiff pay the contractual obligation, Defendant Goodenough shall deliver a warranty deed for the property to Plaintiffs; (4) States that if Defendant Goodenough conveys an interest in the premises subject to this agreement, the conveyance will not terminate the Plaintiffs' rights under the agreement; (5) Directs the Plaintiffs to pay one half of the down payment, ($30,000) to Defendant National Lease Purchase, LLC who will hold the funds until inspection of the property by Defendant Goodenough; (6) Identifies Defendant National Lease Purchase, LLC as an assignor; (7) Identifies Defendant Goodenough above her signature line as assignor.

59.   A joint venture is a contractual relationship in the nature of an informal partnership wherein two or more persons conduct some business enterprise, agreeing to share jointly, or in proportion to capital contributed, in profits and losses.

60.   The relevant provisions in both the National Lease Agreement and the Gray-Belben Agreement described above demonstrate that Defendant Goodenough and Defendant National Lease Purchase, LLC entered into a business enterprise wherein Defendant National Lease Purchase, LLC would contract to pay $525,000 for the

15

Corina property. Defendant National Lease Purchase, LLC was free to sell, assign, transfer, convey, encumber, or otherwise deal with any interest in the Premises. Defendant Goodenough reserved the right to encumber the Corina property for her own benefit and at her own discretion, thereby retaining a valuable interest in the Corina property as well as the right to receive $525,000.

61.    Defendant National Lease Purchase, LLC was free to sell rights in the Corina property in excess of or less than the $525,000 it was obligated to pay without triggering a default under the National Lease Agreement.

62.    Given the respective rights of Defendants Goodenough and National Lease Purchase, LLC with respect to the Corina property, a joint venture between the Defendants existed.

63.    All partners are to be held liable jointly and severally for everything chargeable to the joint venture as the principles of law regarding general partnerships encompass joint ventures.

64.    Plaintiffs are entitled to declaratory relief that a joint venture existed between Defendants Goodenough and National Lease Purchase, LLC thereby binding the joint venture and both Defendants to the terms of the Gray-Belben Agreement.

65.    Plaintiffs are entitled to declaratory relief that the Gray-Belben agreement is a valid contract of sale for the sale of the Corina property, and that they are entitled to have the Corina property deeded to them by Defendant Goodenough upon completion of performance under the Gray-Belben agreement.

## FOURTH CLAIM FOR RELIEF
### Consumer Fraud/UDAP - NRS 41.600

66.    Plaintiffs incorporate the allegations contained in the preceding paragraphs as though set forth in full herein.

67.    NRS 41.600(1) states that an action may be brought by any person who is a victim of consumer fraud.

68.    NRS 41.600(2)(e) defines consumer fraud as a deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive.

69.    Pursuant to NRS 598.0923(1)(f) a person engages in a deceptive trade practice when the seller in a land sale installment contract, fails to (1) Disclose in writing to the buyer any encumbrance or other legal interest in the real property subject to such contract; (2) Any condition known to the seller that would affect the buyer's use of such property; (3) Record the land sale installment contract pursuant to NRS 111.315 within 30 calendar days after the date upon which the seller accepts the first payment from the buyer under such a contract.

70.    Defendants were the seller of the Corina property, and the Plaintiffs were the buyers under the Gray-Belben Agreement.

71.    The Gray-Belben Agreement  is entitled a contract for deed, making it a land sale contract. Paragraph 17 of the  Gray-Belben Agreement provides that a deed will be given to the Plaintiffs upon payment in full of the purchase price.

72.    As a direct and proximate result of Defendants' actions, the Plaintiffs have suffered damages in excess of $75,000.00 according to proof at the time of trial and reasonable attorney fees and costs as provided by statute.

17

**Wherefore**, Plaintiffs pray for the following relief:

1.    With respect to the first claim for relief, declaratory relief that at the time the Gray-Belben Agreement was executed, National Purchase LLC acted as Defendant Goodenough's agent thereby binding her to the terms of the agreement and that the Gray-Belben agreement is a valid contract of sale for the sale of the Corina property, and that they are entitled to have the Corina property deeded to them by Defendant Goodenough upon completion of performance under the Gray-Belben agreement.

2.    With respect to the second claim for relief, declaratory relief that at the time the Gray-Belben Agreement was executed, National Purchase LLC acted as Defendant Goodenough's agent thereby binding her to the terms of the agreement and that the Gray-Belben agreement is a valid contract of sale for the sale of the Corina property, and that they are entitled to have the Corina property deeded to them by Defendant Goodenough upon completion of performance under the Gray-Belben agreement.

3.    With respect to the third claim for relief, declaratory relief that a joint venture existed between Defendants Goodenough and National Lease Purchase, LLC thereby binding the joint venture and both Defendants to the terms of the Gray-Belben Agreement and that the Gray-Belben agreement is a valid contract of sale for the sale of the Corina property, and that they are entitled to have the Corina property deeded to them by Defendant Goodenough upon completion of performance under the Gray-Belben agreement.

4.    With respect to the fourth claim for relief, for damages in excess of $75,000.00 according to proof at the time of trial and reasonable attorney fees and costs as provided by statute.

5.    For an award of reasonable attorney fees and costs.

6.    For such other and further relief as this Court may deem appropriate.


Dated: This _____ day of _____, 2023


By: _____
      Michael Lehners, Esq.
      429 Marsh Ave.
      Reno, Nevada 89509
      Nevada Bar Number 003331

1
2
**VERIFICATION**
3
4  STATE OF NEVADA            )
                             ) ss.
5  COUNTY OF WASHOE          )

6      PAULA BELBEN, under penalties of perjury, being first duly sworn
7
deposes and says:
8
9      That she is a Plaintiff in the above-entitled; that she has read the
10 foregoing **VERIFIED COMPLAINT** and knows the content thereof; that the
11 same is true of her own knowledge, except for those matters therein contained
12
stated upon information and belief, and as to those matters, she believes it to
13
be true.
14
15                                     
16                                     PAULA BELBEN
17 SUBSCRIBED and SWORN to before me
18 this _16_ day of March, 2023
19
   _____
20 NOTARY PUBLIC

DOLORES STIGALL
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 93-0540-2 - Expires May 14, 2025
21
22
23
24
25
26
27
28

**VERIFICATION**

STATE OF NEVADA           )
                                            ) ss.
COUNTY OF WASHOE       )

JAMES GRAY, under penalties of perjury, being first duly sworn deposes and says:

That he is a Plaintiff in the above-entitled; that he has read the foregoing **VERIFIED COMPLAINT** and knows the content thereof; that the same is true of his own knowledge, except for those matters therein contained stated upon information and belief, and as to those matters, he believes it to be true.

_____
JAMES GRAY

SUBSCRIBED and SWORN to before me
this _16_ day of March, 2023

_____
NOTARY PUBLIC

DOLORES STIGALL
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 93-0540-2 - Expires May 14, 2025

## Exhibit  List

Exhibit  1          National  Lease  Agreement

Exhibit  2          Gray-Belben   Agreement

Exhibit  3          Goodenough  Verified  State  Court  Complaint

Exhibit  4          Jepsen  &  McMenomy  Lawfirm  Letter

# Exhibit   1

# Exhibit   1

DocuSign Envelope ID: 9929F533-027D-4D9D-B627-73F1CA30156C

## CONTRACT FOR DEED LEASE PURCHASE AGREEMENT

THIS CONTRACT FOR DEED (this "Agreement") dated this _____ day of
8/19/2022
_____, _____

BETWEEN:


Alexxa Goodenough of 3272 Taylor St, Sacramento, CA 95838

(the "Seller")

OF THE FIRST PART

AND

National Lease Purchase LLC

(collectively the "Purchaser")

OF THE SECOND PART

IN CONSIDERATION OF the covenants and agreements contained in this Agreement and
other good and valuable consideration, the receipt of which is hereby acknowledged, the parties
to this Agreement agree as follows:

## SALE OF PROPERTY
1. On the _____ day of 8/19/2022 _____, _____, the Seller, for and in consideration
   of the sum of $525,000.00, does hereby convey and grant with warranty covenants to the
   Purchaser, all of the following lands and property, together with all improvements
   located on the property: 5545 Corina Cir, Sun Valley, NV 89433
   RS 2609 LT 3 (the "Premises").

## PURCHASE PRICE
2. The purchase price (the "Purchase Price") of the Premises is $525,000.00. The Purchaser
   agrees to pay $30,000.00 upon execution of this Agreement and the option payments
   being payable in monthly installments of $2,400.00, due on the 1st of each month,
   beginning on October 1, 2022, until October 1, 2027, or the Purchase Price is paid in full.

## INTEREST CHARGES

DocuSign Envelope ID: 9929F533-027D-4D9D-B627-73F1CA30156C

3.  Interest of 5.00% per year will be computed monthly and deducted from the monthly payments. The balance of the monthly payment will be applied to the principal amount of the Purchase Price outstanding.  With a 5-year balloon, full payment or owner financing agreement must be paid by October 21, 2027.

**LUMP SUM PAYMENTS**

4.  Lump sum payments may be made at any time, without penalty, to reduce the principal amount of the Purchase Price outstanding.

**PROPERTY TAXES AND ASSESSMENTS**

5.  For the duration of the Agreement, the Seller will be responsible for all taxes and assessments levied against the Premises and may collect the same from the Purchaser by giving 30 days' notice in writing.

**INSURANCE**

6.  The Purchaser is not responsible for insuring the Seller's contents and furnishings in or about the Premises against either damage or loss and the Purchaser assumes no liability for any such damage or loss.

7.  The Purchaser is hereby advised and understands that the Premises is insured by the Seller for both damage and loss to the structure, mechanical or improvements to the Premises, and the Seller assumes responsibility for any such damage or loss. Any premiums paid by the Seller for the insurance on the Premises are payable to the Seller by the Purchaser within 30 days of the Seller furnishing receipts evidencing such insurance to the Purchaser.

8.  The Seller will maintain liability insurance on the Premises, and the Seller assumes responsibility for any such damage or loss resulting from the liability of the Purchaser or the Seller. Any premiums paid by the Seller for the insurance on the Premises are payable to the Seller by the Purchaser within 30 days of the Seller furnishing receipts evidencing such insurance to the Purchaser.

9.  Buyer will have renters insurance.

**PURCHASER'S DEFAULT**

DocuSign Envelope ID: 9929F533-027D-4D9D-B627-73F1CA30156C

10. In the event of the Purchaser's failure to perform any covenant or condition contained in this Agreement, the Seller will give the Purchaser a notice of default. The notice will give the Purchaser 14 days from the date the notice is received to remedy the default. If the Purchaser fails to remedy the default within 14 days, then the entire balance of the Purchase Price, including interest payable, will become due 14 days after the 14-day period to remedy the default expires (the "Notice Period"). Failure to pay the full amount of the Purchase Price owing will result in the termination of this Agreement at the end of the Notice Period.

11. The Purchaser and the Seller agree that in the event that the Purchaser fails to remedy a default and this Agreement is terminated, the Purchaser will vacate the Premises within 30 days of the Agreement terminating. The Purchaser and the Seller further agree that failure of the Purchaser to vacate within that period gives the Seller a right to maintain an action to obtain vacant possession of the Premises.

12. In the event of default and termination of this Agreement by the Purchaser, the Purchaser forfeits any and all payments made under the terms of this Agreement, including but not limited to all payments made towards the Purchase Price, and any and all taxes, assessments, or insurance premiums paid by the Purchaser, as liquidated damages for breach of this Agreement.

13. The Seller reserves the right to recover damages resulting from the willful acts or negligence of the Purchaser.

**SELLER'S RIGHT TO REINSTATE AGREEMENT AFTER DEFAULT**

14. In the event of the Purchaser's default and the termination of this Agreement, the Seller, at his sole discretion, will have the right to reinstate this Agreement. In exercising his discretion, the Seller may require the Purchaser to:

    (i) pay all amounts due and owing under this Agreement had the Agreement not been terminated;

    (ii) cure any defaults that have occurred; and

    (iii) pay all expenses incurred by the Seller in enforcing their rights under this Agreement.

DocuSign Envelope ID: 9929F533-027D-4D9D-B627-73F1CA30156C

15. All payments made under the preceding provision must be made in a form acceptable to both parties.

**ASSIGNMENT OR SALE OF THE PREMISES**

16. The Purchaser may sell, assign, transfer, convey, encumber, or otherwise deal with any interest in the Premises.

**DEED AND EVIDENCE OF TITLE**

17. Upon payment of the full Purchase Price, including all taxes, assessments, interest, and other charges due to the Seller, the Seller agrees to deliver to the Purchaser, within a reasonable amount of time, a Warranty Deed to the Premises in the name of the Purchaser, free and clear of all liens and encumbrances.

**DISCLOSURE REQUIREMENTS**

18. The Purchaser and the Seller shall make all disclosures required by law.

**NOTICES**

19. All notices required to be sent under this Agreement will be sent by pre-paid registered mail to:

If to the Purchaser:
National Lease Purchase will Assign to
James Gray of 300 Westbrook Ln, Reno, NV, and
Paula Belben of 321 Lucky Ln, Reno, NV.

If to the Seller:

Alexxa Goodenough of 3272 Taylor St, Sacramento, CA 95838.

**CONVEYANCE OR MORTGAGE BY SELLER**

20. The Seller reserves the right to encumber the Premises with a mortgage. The Seller agrees to meet the obligations due under the mortgage and to provide proof of the same to the Purchaser upon the written demand of the Purchaser.

21. The Seller reserves the right to convey their interest in the Premises, subject to this Agreement. Such conveyance will not be cause for termination of this Agreement.

**SECURITY**

DocuSign Envelope ID: 9929F533-027D-4D9D-B627-73F1CA30156C

22. This Agreement will act as security for the performance of all of the Purchaser's obligations under this Agreement.

**TIME OF THE ESSENCE**

23. Time is of the essence for the performance of all of the Purchaser's obligations under this Agreement.

**ATTORNEY FEES**

24. In the event of a default by the Purchaser, the Purchaser will pay all the Seller's reasonable and actual attorney fees associated with enforcing the Seller's rights under this Agreement. The default will not be deemed to be corrected until all attorney fees have been paid.

**ENTIRE AGREEMENT**

25. This Agreement will constitute the entire agreement between the Purchaser and the Seller. Any prior understanding or representation of any kind preceding the date of this Agreement will not be binding on either party except to the extent that it is incorporated into this Agreement.

**AMENDMENTS**

26. Any amendments or modifications of this Agreement or additional obligations assumed by either party in connection with this Agreement will only be binding if they are evidenced in writing and signed by each party or an authorized representative of each party.

**WAIVERS**

27. A waiver of any rights by any party in connection with this Agreement will only be binding if evidenced in writing and signed by each party or an authorized representative of each party.

**SEVERABILITY**

28. If there is a conflict between any provision of this Agreement and the applicable legislation of the State of Nevada (the "Act"), the Act will prevail and such provisions of this Agreement will be amended or deleted as necessary in order to comply with the Act. Further, any provisions that are required by the Act are incorporated into this Agreement.

29. In the event that any of the provisions of this Agreement will be held to be invalid or unenforceable in whole or in part, those provisions, to the extent enforceable and all other provisions of this Agreement will nevertheless continue to be valid and enforceable as

DocuSign Envelope ID: 9929F533-027D-4D9D-B627-73F1CA30156C

though the invalid or unenforceable parts had not been included in this Agreement and the remaining provisions had been executed by both parties subsequent to the expungement of the invalid provision.

## INTERPRETATION

30. Headings are inserted for the convenience of the parties only and are not to be considered when interpreting this Agreement. Words in the singular mean and include the plural and vice versa. Words in the masculine mean and include the feminine and vice versa.

## JOINT AND SEVERAL LIABILITY

31. All Sellers are jointly and severally liable for the acts, omissions, and liabilities of all other Sellers to this Agreement.

## HEIRS AND ASSIGNS

32. This Agreement will extend to and be binding upon and inure to the benefit of the respective heirs, executors, administrators, successors, and assigns, as the case may be, of each party to this Agreement. All covenants are to be construed as conditions of this Agreement.

## ADDITIONAL CLAUSES

33. $30,000 dollars due by October 31, 2022

34. Assignor will be making the following repairs to the home; Removing of all personal items (including vehicles and vessels) from interior and exterior or property, interior touch up paint, fixing of kitchen cabinets and drawers that are broken, repair exterior skirting, toilet replacement, interior wall hole patching and yard trash removal. Inspection to done for repairs on August 30th. $30,000 earnest money is refundable if repairs are not completed.

35. Occupancy will be as soon as seller has personal items removed from main house.

IN WITNESS WHEREOF the Seller and Purchaser have duly affixed their signatures under hand and seal on this _____ day of ___8/19/2022___, _____.

Witness: _____ (Sign)

_____ (Print)          Alexxa Goodenough (Seller)

DocuSign Envelope ID: 9929F533-027D-4D9D-B627-73F1CA30156C

*Land Contract*                                                                 Page 7 of 10

Witness: _____ (Sign)

_____ (Print)                    National Lease Purchase (Purchaser)

                                                                                    8/19/2022

Witness: _____ (Sign)

_____ (Print)                    _____

DocuSign Envelope ID: 9929F533-027D-4D9D-B627-73F1CA30156C

## SELLER ACKNOWLEDGMENT

STATE OF NEVADA
COUNTY OF _____

The instrument was acknowledged before me on the _____ day of _____,
_____, by Alexxa Goodenough.


_____
Notary Public

My commission expires: _____

DocuSign Envelope ID: 9929F533-027D-4D9D-B627-73F1CA30156C

*Land Contract*                                                                                          Page 9 of 10

## PURCHASER ACKNOWLEDGMENT

STATE OF NEVADA

COUNTY OF _____

The instrument was acknowledged before me on the _____ day of _____, _____, by James Gray, and Paula Belben.


_____

Notary Public

My commission expires: _____

DocuSign Envelope ID: 9929F533-027D-4D9D-B627-73F1CA30156C

Drafted by:                          Return to: _____
National Lease Purchase LLC          of

                                     _____

# Exhibit  2

# Exhibit  2

DocuSign Envelope ID: BEA6AECB-F59F-4633-B15E-BE6ABC463848

## CONTRACT FOR DEED

THIS CONTRACT FOR DEED (this "Agreement") dated this _____ day of
__8/19/2022_____, _____

BETWEEN:

Alexxa Goodenough of 3272 Taylor St, Sacramento, CA 95838

(the "Seller")

OF THE FIRST PART

AND

James Gray of 300 Westbrook Ln, Reno, NV, and
Paula Belben of 321 Lucky Ln, Reno, NV

(collectively the "Purchaser")

OF THE SECOND PART

IN CONSIDERATION OF the covenants and agreements contained in this Agreement and
other good and valuable consideration, the receipt of which is hereby acknowledged, the parties
to this Agreement agree as follows:

**SALE OF PROPERTY**

1. On the _____ day of ___8/19/2022_____, _____, the Seller, for and in consideration
   of the sum of $440,000.00, does hereby convey and grant with warranty covenants to the
   Purchaser, all of the following lands and property, together with all improvements
   located on the property: 5545 Corina Cir, Sun Valley, NV 89433
   RS 2609 LT 3 (the "Premises").

**PURCHASE PRICE**

2. The purchase price (the "Purchase Price") of the Premises is $440,000.00. The Purchaser
   agrees to pay $60,000.00 upon execution of this Agreement and the balance of the
   Purchase Price being payable in monthly installments of $1,995.00, due on the 1st of
   each month, beginning on October 1, 2022, until the Purchase Price is paid in full.

Page 1 of 10

DocuSign Envelope ID: BEA6AECB-F59F-4633-B15E-BE6A8C463848

## INTEREST CHARGES

3. Interest of 3.00% per year will be computed monthly and deducted from the monthly payments. The balance of the monthly payment will be applied to the principal amount of the Purchase Price outstanding.

## LUMP SUM PAYMENTS

4. Lump sum payments may be made at any time, without penalty, to reduce the principal amount of the Purchase Price outstanding.

## PROPERTY TAXES AND ASSESSMENTS

5. For the duration of the Agreement, the Seller will be responsible for all taxes and assessments levied against the Premises and may collect the same from the Purchaser by giving 30 days' notice in writing.

## INSURANCE

6. The Purchaser is not responsible for insuring the Seller's contents and furnishings in or about the Premises against either damage or loss and the Purchaser assumes no liability for any such damage or loss.

7. The Purchaser is hereby advised and understands that the personal property of the Purchaser is insured by the Seller for both damage and loss, and the Seller assumes responsibility for any such damage or loss. Any premiums paid by the Seller for the Purchaser's contents insurance are payable to the Seller by the Purchaser within 30 days of the Seller furnishing receipts evidencing such insurance to the Purchaser.

8. The Purchaser is hereby advised and understands that the Premises is insured by the Seller for both damage and loss to the structure, mechanical or improvements to the Premises, and the Seller assumes responsibility for any such damage or loss. Any premiums paid by the Seller for the insurance on the Premises are payable to the Seller by the Purchaser within 30 days of the Seller furnishing receipts evidencing such insurance to the Purchaser.

9. The Seller will maintain liability insurance on the Premises, and the Seller assumes responsibility for any such damage or loss resulting from the liability of the Purchaser or the Seller. Any premiums paid by the Seller for the insurance on the Premises are payable to the Seller by the Purchaser within 30 days of the Seller furnishing receipts evidencing such insurance to the Purchaser.



**PURCHASER'S DEFAULT**

10.  In the event of the Purchaser's failure to perform any covenant or condition contained in this Agreement, the Seller will give the Purchaser a notice of default. The notice will give the Purchaser 14 days from the date the notice is received to remedy the default. If the Purchaser fails to remedy the default within 14 days, then the entire balance of the Purchase Price, including interest payable, will become due 14 days after the 14-day period to remedy the default expires (the "Notice Period"). Failure to pay the full amount of the Purchase Price owing will result in the termination of this Agreement at the end of the Notice Period.

11.  The Purchaser and the Seller agree that in the event that the Purchaser fails to remedy a default and this Agreement is terminated, the Purchaser will vacate the Premises within 30 days days of the Agreement terminating. The Purchaser and the Seller further agree that failure of the Purchaser to vacate within that period gives the Seller a right to maintain an action to obtain vacant possession of the Premises.

12.  In the event of default and termination of this Agreement by the Purchaser, the Purchaser forfeits any and all payments made under the terms of this Agreement, including but not limited to all payments made towards the Purchase Price, and any and all taxes, assessments, or insurance premiums paid by the Purchaser, as liquidated damages for breach of this Agreement.

13.  The Seller reserves the right to recover damages resulting from the willful acts or negligence of the Purchaser.

**SELLER'S RIGHT TO REINSTATE AGREEMENT AFTER DEFAULT**

14.  In the event of the Purchaser's default and the termination of this Agreement, the Seller, at his sole discretion, will have the right to reinstate this Agreement. In exercising his discretion, the Seller may require the Purchaser to:

(i) pay all amounts due and owing under this Agreement had the Agreement not been terminated;

(ii) cure any defaults that have occurred; and

(iii) pay all expenses incurred by the Seller in enforcing their rights under this Agreement.

DocuSign Envelope ID: BEA6AECB-F59F-4633-B15E-BE6ABC463848

15. All payments made under the preceding provision must be made in a form acceptable to both parties.

**ASSIGNMENT OR SALE OF THE PREMISES**

16. The Purchaser may not sell, assign, transfer, convey, encumber, or otherwise deal with any interest in the Premises without the written consent of the Seller.

**DEED AND EVIDENCE OF TITLE**

17. Upon payment of the full Purchase Price, including all taxes, assessments, interest, and other charges due to the Seller, the Seller agrees to deliver to the Purchaser, within a reasonable amount of time, a Warranty Deed to the Premises in the name of the Purchaser, free and clear of all liens and encumbrances.

**DISCLOSURE REQUIREMENTS**

18. The Purchaser and the Seller shall make all disclosures required by law.

**NOTICES**

19. All notices required to be sent under this Agreement will be sent by pre-paid registered mail to:

If to the Purchaser:

James Gray of 300 Westbrook Ln, Reno, NV, and
Paula Belben of 321 Lucky Ln, Reno, NV.

If to the Seller:

Alexxa Goodenough of 3272 Taylor St, Sacramento, CA 95838.

**CONVEYANCE OR MORTGAGE BY SELLER**

20. The Seller reserves the right to encumber the Premises with a mortgage. The Seller agrees to meet the obligations due under the mortgage and to provide proof of the same to the Purchaser upon the written demand of the Purchaser.

21. The Seller reserves the right to convey their interest in the Premises, subject to this Agreement. Such conveyance will not be cause for termination of this Agreement.

**SECURITY**



DocuSign Envelope ID: BEA6AECB-F59F-4633-B15E-BE6ABC463848

*Land Contract*                                                                                            Page 5 of 10

22. This Agreement will act as security for the performance of all of the Purchaser's obligations
    under this Agreement.

**TIME OF THE ESSENCE**

23. Time is of the essence for the performance of all of the Purchaser's obligations under this
    Agreement.

**ATTORNEY FEES**

24. In the event of a default by the Purchaser, the Purchaser will pay all the Seller's reasonable
    and actual attorney fees associated with enforcing the Seller's rights under this
    Agreement. The default will not be deemed to be corrected until all attorney fees have
    been paid.

**ENTIRE AGREEMENT**

25. This Agreement will constitute the entire agreement between the Purchaser and the Seller.
    Any prior understanding or representation of any kind preceding the date of this
    Agreement will not be binding on either party except to the extent that it is incorporated
    into this Agreement.

**AMENDMENTS**

26. Any amendments or modifications of this Agreement or additional obligations assumed by
    either party in connection with this Agreement will only be binding if they are evidenced
    in writing and signed by each party or an authorized representative of each party.

**WAIVERS**

27. A waiver of any rights by any party in connection with this Agreement will only be binding
    if evidenced in writing and signed by each party or an authorized representative of each
    party.

**SEVERABILITY**

28. If there is a conflict between any provision of this Agreement and the applicable legislation
    of the State of Nevada (the "Act"), the Act will prevail and such provisions of this
    Agreement will be amended or deleted as necessary in order to comply with the Act.
    Further, any provisions that are required by the Act are incorporated into this Agreement.

29. In the event that any of the provisions of this Agreement will be held to be invalid or
    unenforceable in whole or in part, those provisions, to the extent enforceable and all other
    provisions of this Agreement will nevertheless continue to be valid and enforceable as



DocuSign Envelope ID: BEA6AECB-F59F-4633-B15E-BE6ABC463848

though the invalid or unenforceable parts had not been included in this Agreement and the remaining provisions had been executed by both parties subsequent to the expungement of the invalid provision.

## INTERPRETATION

30. Headings are inserted for the convenience of the parties only and are not to be considered when interpreting this Agreement. Words in the singular mean and include the plural and vice versa. Words in the masculine mean and include the feminine and vice versa.

## JOINT AND SEVERAL LIABILITY

31. All Sellers are jointly and severally liable for the acts, omissions, and liabilities of all other Sellers to this Agreement.

## HEIRS AND ASSIGNS

32. This Agreement will extend to and be binding upon and inure to the benefit of the respective heirs, executors, administrators, successors, and assigns, as the case may be, of each party to this Agreement. All covenants are to be construed as conditions of this Agreement.

## ADDITIONAL CLAUSES

33. $30,000 dollars due upon contract signing to Assignor National Lease Purchase and funds to held until by Assignor until inspection of property by seller.  The balance of $60,000 will be due by Oct 31, 2022.

34. Assignor will be making the following repairs to the home; Removing of all personal items (including vehicles and vessels) from interior and exterior or property, interior touch up paint, fixing of kitchen cabinets and drawers that are broken, repair exterior skirting, toilet replacement, interior wall hole patching and yard trash removal.  Inspection to done for repairs on August 30th.  $30,000 earnest money is refundable if repairs are not completed.

IN WITNESS WHEREOF the Seller and Purchaser have duly affixed their signatures under hand and seal on this _____ day of 8/20/2022 _____, _____.

Witness: _____ (Sign)          ASSIGNOR OF CONTRACT
                                                                          _____

_____ (Print)          Alexxa Goodenough (Seller)

                                                                          ┌─DocuSigned by:
                                                                          └─AD093D302E39493...

DocuSign Envelope ID: BEA6AECB-F59F-4633-B15E-BE6ABC463848

Witness: _____ (Sign)

_____ (Print)

DocuSigned by:

James Gray (Purchaser)                    8/19/2022

Witness: _____ (Sign)

_____ (Print)

DocuSigned by:

Paula Belben (Purchaser)                  8/19/2022

DocuSign Envelope ID: BEA6AECB-F59F-4633-B15E-BE6ABC463848

## SELLER ACKNOWLEDGMENT

STATE OF NEVADA

COUNTY OF _____

The instrument was acknowledged before me on the _____ day of _____,
_____, by Alexxa Goodenough.

_____

Notary Public

My commission expires: _____

## PURCHASER ACKNOWLEDGMENT

STATE OF NEVADA

COUNTY OF _____

The instrument was acknowledged before me on the _____ day of _____,

_____, by James Gray, and Paula Belben.

_____

Notary Public

My commission expires: _____

DocuSign Envelope ID: BEA6AEC8-F59F-4633-B15E-BE6ABC463848

| Drafted by: | Return to: _____ |
| Alexxa Goodenough of 3272 Taylor | of |
| St, Sacramento, CA 95838 | _____ |

# Exhibit 3

# Exhibit 3

F I L E D
Electronically
CV22-01895
2022-11-22 12:18:45 PM
Alicia L. Lerud
Clerk of the Court
Transaction # 9374948 : dstaggs

Code: $1425
JENNIFER McMENOMY, Esq.
Nevada State Bar No. 14239
KENDRA J. JEPSEN, Esq.
Nevada State Bar No. 14065
JEPSEN & McMENOMY, PLLC
100 Vine Street
Reno, Nevada 89503
Telephone: (775) 525-8850
Email: Jenny@JepsenMcMenomy.com

*Attorneys for Alexxa Goodenough*

## IN THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

## IN AND FOR THE COUNTY OF WASHOE

| | |
|---|---|
| ALEXXA GOODENOUGH, an individual; | Case No. |
| Plaintiff, | Dept. No. |
| vs. | |
| NATIONAL LEASE PURCHASE, LLC, a Colorado Limited Liability Company; MARIO GARCIA, an individual; and DOES 1 through 10, inclusive, | |
| Defendants. | |

## VERIFIED COMPLAINT

[Arbitration Exempt Pursuant to NAR 3; Damages in excess of $50,000, Real Property Dispute and Declaratory Relief]

COMES NOW, Plaintiff, by and through her attorneys, JEPSEN & McMENOMY, PLLC, and hereby complains and alleges as follows:

## PARTIES

1.    Plaintiff, ALEXXA GOODENOUGH ("Goodenough") is a resident of Sacramento, California.

///

1

2.    Upon information and belief, Defendant NATIONAL LEASE PURCHASE, LLC ("National Lease Purchase") is a Colorado registered Limited Liability Company.

3.    Upon information and belief, Defendant MARIO GARCIA ("Garcia"), at all relevant times, was and is a resident of San Diego, California.

4.    Plaintiff does not know the true names and capacities of the Defendants sued herein as Does 1 through 10, inclusive, and therefore sue these Defendants by fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of these fictitiously named Defendants are responsible in some actionable manner for the damages herein alleged. Plaintiff requests leave of the Court to amend the Complaint to name the Defendants specifically when their identities become known.

## VENUE AND JURISDICTION

5.    This Court has subject matter and personal jurisdiction over National Lease Purchase and Garcia and venue is proper in the Second Judicial District Court of the State of Nevada because Plaintiff and National Lease Purchase, with Garcia as the representative, entered into a Contract for Deed Lease Purchase Agreement in Washoe County, Nevada and the subject property is also located in Washoe County, Nevada.

6.    This action includes a claim for declaratory and extraordinary relief and damages in excess of Fifty Thousand and No/100 Dollars ($50,000), thereby exempting the case from Nevada's Arbitration Program pursuant to NAR 3.

## GENERAL ALLEGATIONS

### A.    5545 CORINA CIRCLE, SUN VALLEY, NEVADA 89433.

7.    Goodenough is the deeded owner of the Property located at 5545 Corina Circle, Sun Valley, Nevada 89433, also known as APN 085-631-41 (the "Property").

///

JEPSEN & MCMENOMY PLLC
100 Vine Street
Reno, NV 89503
Phone: (775) 525-8850

2

8.    The Property consists of approximately .458 acres of land and includes a main house and two (2) outbuildings functioning as garages.

9.    In or around August 2022, Goodenough was approached by Defendant Garcia, on behalf of National Lease Purchase to purchase the Property.

10.    Upon information and belief, Garcia is the founder and owner of Defendant National Lease Purchase.

11.    On or about August 19, 2022, Goodenough entered into a contract with National Lease Purchase entitled "Contract for Deed Lease Purchase Agreement" (the "Agreement"). *See* a true and correct copy of the Agreement attached hereto as Exhibit 1.

12.    The terms of the Agreement are as follows:

**SALE OF PROPERTY**

1.  On the day of 8/19/2022, the Seller for and in consideration of the sum of $525,000.00 does hereby convey and grant with warranty covenants to the Purchaser, all of the following lands and property, together with all improvements located on the property: 5545 Corina Cir, Sun Valley, NV 89433 RS 2609 LT 3 (the "Premises")

**PURCHASE PRICE**

2.  The purchase price (the "Purchase Price") of the Premises is $525,000.00. The Purchaser agrees to pay $30,000.00 upon execution of this Agreement and the option payments being payable monthly installments of $2,400.00, due on the first of each month, beginning on October 1, 2022, until October 1, 2027, or the Purchase Price is paid in full.

**INTEREST CHARGES**

3.  Interest of 5.00% per year will be computed monthly and deducted from the monthly payments. The balance of the monthly payment will be applied to the principal amount of the Purchase Price outstanding. With a 5-year balloon, full payment or owner financing agreement must be paid by October 21, 2027.

    […]

/ / /

JEPSEN & MCMENOMY PLLC
100 Vine Street
Reno, NV 89503
Phone: (775) 525-8850

3

**PURCHASER'S DEFAULT**

10. In the event of the Purchaser's failure to perform any covenant or condition contained in this Agreement, the Seller will give the Purchaser a notice of default. The notice will give Purchaser 14 days from the date the notice was received to remedy the default. If the Purchaser fails to remedy the default within 14 days, then the entire balance of the Purchase Price, including interest payable, will become 14 days after the 14-day period to remedy the default expires (the "Notice Period"). Failure to pay the full amount of the Purchase Price owing will result in the termination of this Agreement at the end of the Notice Period.

13.   As stated above, pursuant to the Agreement, National Lease Purchase was required to pay the Down Payment and then make payments of Two Thousand Four Hundred and No/100 Dollars on the first of each month beginning on October 1, 2022 ("installment payments").

14.   Upon information and belief, Goodenough was to sell the Property to National Lease Purchase who would then rent the Property out to qualified renters.

15.   All communications with regard to the Property and the Agreement have been by and between Plaintiff and Garcia.

**B. REPRESENTATIONS TO GOODENOUGH PRIOR TO THE SIGNING OF THE AGREEMENT**

16.   Prior to the parties signing the Agreement, Defendant Garcia made several false and/or misleading representations to Goodenough regarding National Lease Purchase and their intentions as to the Property.

17.   Importantly, Garcia misrepresented to Goodenough that National Lease Purchase was licensed and qualified to do business in the State of Nevada.

18.   Garcia represented to Goodenough that she would be permitted to approve any and all renters before they entered into a lease and began residing on the Property.

19.   Garcia represented to Goodenough that she would be permitted to keep her belongings in one or both of the detached garages on the Property and that she would be able to access the garages at any time.

JEPSEN & MCMENOMY PLLC
100 Vine Street
Reno, NV 89503
Phone: (775) 525-8850

4

20.     Garcia further represented to Goodenough that any tenants on the Property would be unable to access the two (2) detached garages on the Property which currently contain Goodenough's belongings.

21.     Garcia represented to Goodenough that any and all leases would not permit pets to reside at the Property.

22.     Garcia represented to Goodenough that he would hire a moving company to move her belongings into the detached garage.

### C. EVENTS AFTER EXECUTION OF THE AGREEMENT

23.     National Lease Purchase is not now, nor was it at the time of execution of the Agreement, registered to do business in Nevada as a domestic or foreign entity according to the State of Nevada records.

24.     Neither National Lease Purchase nor Garcia paid Goodenough the Down Payment in the amount of Thirty Thousand and No/100 Dollars ($30,000.00) upon execution of the Agreement ("Down Payment"). As of the filing of this Complaint, Goodenough has still not received the Down Payment required by the Agreement.

25.     In or around September 2022, National Lease Purchase, through Garcia, utilized non-movers to move Goodenough's belongings into one of the outbuildings on the Property.

26.     In or around September 2022, Defendant National Lease Purchase, through Garcia, moved renters into the Property without first notifying or receiving approval from Goodenough.

27.     Upon information and belief, Garcia and National Lease Purchase chose renters that owned two (2) dogs which are currently residing on the Property.

28.     Upon information and belief, the renters have already damaged the Property despite having resided at the Property for only a little more than two (2) months.

5

29.    Neither Garcia, nor National Lease Purchase have allowed Goodenough access the two (2) detached garages on the Property to retrieve her belongings.

**D. GARCIA AND NATIONAL LEASE PURCHASE FAIL TO PAY MONTHLY INSTALLMENTS INCLUDED IN AGREEMENT**

30.    Pursuant to the Agreement, Goodenough was to receive the payments via Zelle to her bank account for any and all payments pursuant to the Agreement other than the initial Thirty Thousand and No/100 ($30,000.00).

31.    On or around October 5, 2022, four days after the first monthly installment of Two Thousand Four Hundred Dollars ($2,400.00) was due, Goodenough received a "pro-rated rent" payment in the amount of One Thousand Nine Hundred and Ninety-Five Dollars ($1,995.00) via wire transfer to her bank account.

32.    The parties never agreed that Garcia's and National Lease Purchase's monthly installment would be pro-rated based upon rent Defendants received from the Property.  Thus, Defendants' first monthly installment was four days late and Four Hundred and Five Dollars and No/100 ($405.00) short.

33.    As of the filing of this Complaint, Garcia and National Lease Purchase have failed to pay their monthly installment of Two Thousand Four Hundred Dollars ($2,400.00).

34.    Further, because payment took place via wire transfer, Goodenough has incurred additional fees for the bank wires.

**E. GOODENOUGH PROVIDES GARCIA AND NATIONAL LEASE PURCHASE WITH A NOTICE OF DEFAULT PURSUANT TO THE AGREEMENT**

35.    On or about October 25, 2022, Goodenough, through her counsel sent National Lease Purchase a Notice of Default, pursuant to the Agreement, regarding the lack of payment as well as detailing Garcia's misrepresentations.

6

36.     The Notice of Default was sent to 402 West Broadway, San Diego, California, 92101. This is the address contained on "Contact" page of their website.

37.     The Notice of Default was returned as undeliverable on or about November 7, 2022.

38.     Aside from the damages incurred for Defendants' bad acts, Plaintiff will likely incur additional damages to evict the tenants now residing in the Property.

### FIRST CLAIM FOR RELIEF
**(Breach of Contract—National Lease Purchase)**

39.     Plaintiff incorporates all prior allegations as if fully set forth herein.

40.     The parties entered into the Agreement whereby Goodenough agreed to sell, and National Lease Purchase agreed to buy the Property for the purchase price of Five Hundred Twenty-Five Thousand and No/100 ($525,000.00).

41.     Pursuant to the Agreement, the parties additionally agreed that National Lease Purchase would pay Plaintiff a Down Payment of Thirty Thousand Dollars and No/100 ($30,000.00) upon execution of the Agreement.

42.     The Agreement is a valid and enforceable contract under Nevada law.

43.     National Lease Purchase has breached the Agreement by failing to deliver, upon execution of the Agreement, Thirty Thousand Dollars, and No/100 ($30,000.00).

44.     National Lease Purchase has breached the Agreement by failing to deliver to Goodenough the initial installment payment of Two Thousand Four Hundred and No/100 Dollars ($2,400.00) on or before October 1, 2022.

45.     National Lease Purchase has breached the Agreement by failing to deliver to Goodenough the second installment payment of Two Thousand Four Hundred and No/100 Dollars ($2,400.00) on or before November 1, 2022.

///

///

JEPSEN & MCMENOMY PLLC
100 Vine Street
Reno, NV 89503
Phone: (775) 525-8850

7

**JEPSEN & MCMENOMY PLLC**
100 Vine Street
Reno, NV 89503
Phone: (775) 525-8850

46.    As a result of National Lease Purchase's actions, Goodenough has sustained damages in excess of Fifteen Thousand and No/100 Dollars ($15,000.00) and she is entitled to recover her reasonable and necessary attorneys' fees and costs incurred in this action.

**SECOND CLAIM FOR RELIEF**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing –**
**National Lease Purchase)**

47.    Plaintiff incorporates all prior allegations as if fully set forth herein.

48.    Plaintiff is a party to the Agreement with National Lease Purchase.

49.    National Lease Purchase and its agents owe Plaintiff a duty of good faith and fair dealing arising from the Agreement pursuant to Nevada law.

50.    National Lease Purchase deliberately breached the duty of good faith and fair dealing by performing in a manner that is unfaithful to the purpose of the Agreement and which contravenes the intention and spirit of the Agreement.

51.    Plaintiff's justifiable expectations have been denied as a result of National Lease Purchase's breach of the covenant of good faith and fair dealing.

52.    As a consequence of National Lease Purchase's actions, Plaintiff has sustained damages in excess of Fifteen Thousand and No/100 Dollars ($15,000.00) and she is entitled to recover her reasonable and necessary attorney's fees and costs incurred in this action.

**THIRD CLAIM FOR RELIEF**
**(Fraudulent Misrepresentation -- Defendants)**

53.    Plaintiff incorporates all prior allegations as if fully set forth herein.

54.    Garcia, acting in his capacity as owner and "Managing Director" of National Lease Purchase, misrepresented to Plaintiff that National Lease Purchase was licensed to do business in the State of Nevada, prior to the signing of the Agreement in August of 2022.

///

///

8

**JEPSEN & MCMENOMY PLLC**
100 Vine Street
Reno, NV 89503
Phone: (775) 525-8850

55.     Upon information and belief, National Lease Purchase is not licensed to do business in the State of Nevada. Garcia knew this representation was false and that National Lease Purchase was not licensed to do business in the State of Nevada.

56.     Garcia also made statements assuring Plaintiff that she would have the ability to approve any tenants that would be residing in the Property.

57.     Defendant Garcia also made statements assuring Plaintiff that she would have unrestricted access to her personal property located in the outbuildings on the Property.

58.     The foregoing representations were material misrepresentations.

59.     Garcia intended to induce Plaintiff into entering into the Agreement with National Lease Purchase by leading her to believe that National Lease Purchase was licensed to do business in the State of Nevada.

60.     Garcia made the additional misrepresentations in order to induce Plaintiff into entering into the Agreement with National Lease Purchase.

61.     Plaintiff relied upon the representations and promises made by Garcia to her detriment by entering into the Agreement.

62.     As a consequence of relying on these representations and promises, Plaintiff has sustained damages in excess of Fifteen Thousand and No/100 Dollars ($15,000.00) and are entitled to recover their reasonable and necessary attorney's fees and costs incurred in this action.

63.     Based on the foregoing intentional, oppressive, fraudulent and/or malicious acts or omissions of Defendants, Plaintiffs are entitled to an award of punitive damages in a sum in excess of Fifteen Thousand and No/100 Dollars ($15,000.00), the exact amount to be proven at trial.

### SIXTH CLAIM FOR RELIEF
**(Constructive Fraud-Defendants)**

64.     Plaintiff incorporates all prior allegations as if fully set forth herein.

9

65. Plaintiff and Defendants, specifically Garcia, maintained a confidential relationship. Plaintiff reposed confidence and trust in Garcia when she entered into the Agreement which would effectively allow Garcia and National Purchase Lease to operate a rental business out of her Property.

66. Equity and good conscience required Garcia and National Purchase Lease to act in good faith and with due regard to Plaintiff's interest.

67. Instead, Garcia and National Purchase Lease acted with the intent to deprive Plaintiff of the Property by failing to pay her the Down Payment of $30,000, failing to pay the full amount of the first monthly installment on October 1, 2022 and altogether failing to pay the second installment due on November 1, 2022.

68. Additionally, Garcia and National Lease Purchase acted with the intent to deprive Plaintiff of her Property by restricting her ability to approve the tenants residing at the Property and refusing to allow her to enter upon the Property to access her personal belongings.

69. As a consequence of Defendants' actions, Plaintiff has sustained damages in excess of Fifteen Thousand and No/100 Dollars ($15,000.00) and are entitled to recover their reasonable and necessary attorneys' fees and costs incurred in this action.

70. Based on the foregoing intentional, oppressive, fraudulent and/or malicious acts and omissions of Defendants, Plaintiff is entitled to an award of punitive damages in a sum in excess of Fifteen Thousand and No/100 Dollars ($15,000.00).

## SEVENTH CLAIM FOR RELIEF
### (Unjust Enrichment – Defendants)

71. Plaintiff incorporates all prior allegations as if fully set forth herein.

72. Defendants have received and retain benefits through Plaintiff's reliance upon the Agreement as Plaintiff has not received the full expectation of the Agreement in the form of the Thirty Thousand and No/100 Dollars ($30,000.00) for the Down Payment nor the full amount for the monthly installment payments.

10

JEPSEN & MCMENOMY PLLC
100 Vine Street
Reno, NV 89503
Phone: (775) 525-8850

73.     Defendants' retention of these funds is unjust and inequitable.

74.     Plaintiff is entitled to be compensated for her probable loss from Defendants in an amount in excess of Fifteen Thousand and No/100 ($15,000.00) and she is entitled to recover her reasonable and necessary attorneys' fees and costs incurred in this action.

### EIGHTH CLAIM FOR RELIEF
#### (Alter-Ego – Garcia)

75.     Plaintiff incorporates all prior allegations as if fully set forth herein.

76.     Plaintiff is informed and believes that at all times during Plaintiff's business dealings with Garcia and National Lease Purchase, National Lease Purchase was influenced and governed by Garcia, its alter ego.

77.     Plaintiff is informed and believes that at all times, Garcia and National Lease Purchase have been inseparable from each other such that Garcia is the "Managing Director" and "Founder" of National Lease Purchase.

78.     Garcia personally approached Plaintiff and misrepresented both his and National Lease Purchase's intentions to induce Plaintiff to enter into the Agreement.

79.     Plaintiff is informed and believes that, at all relevant times, Garcia and National Lease Purchase were so intertwined that adherence to the fiction of National Lease Purchase as a separate entity would, under the circumstances, sanction a fraud and promote injustice.

80.     As a consequence of Garcia's conduct, Plaintiff has sustained damages in excess of Fifteen Thousand and No/100 Dollars ($15,000.00) and is entitled to recover her reasonable and necessary attorneys' fees and costs incurred in this action.

### NINTH CLAIM FOR RELIEF
#### (Violation of NRS 76.100 – Defendants)

81.     Plaintiff incorporates all prior allegations as if fully set forth herein.

///

11

JEPSEN & MCMENOMY PLLC
100 Vine Street
Reno, NV 89503
Phone: (775) 525-8850

82.    NRS 76.100 states, "[a] person shall not conduct a business in this State unless and until the person obtains a state business license issued by the Secretary of State."

83.    Upon information and belief, Defendants have not obtained a state business license issued by the Secretary of State of Nevada, nor have they obtained an exemption from the Secretary of State pursuant to NRS 76.105.

84.    Defendants are in violation of NRS Chapter 76.

85.    As a consequence of Garcia's conduct, Plaintiff has sustained damages in excess of Fifteen Thousand and No/100 Dollars ($15,000.00) and is entitled to recover her reasonable and necessary attorneys' fees and costs incurred in this action.

## TENTH CLAIM FOR RELIEF
### (Declaratory Relief)

86.    Plaintiff incorporates all prior allegations as if fully set forth herein.

87.    An actual controversy has arisen and now exists between the parties concerning the following matters:

a.    National Lease Purchase's lack of compliance with the State laws of Nevada and its failure to register as a legal entity doing business in the State of Nevada.

b.    The validity and voidability of the Agreement as a result of National Lease Purchase's fraudulent inducement of the contract.

88.    Judicial declarations are necessary and appropriate at this time to enable the parties to ascertain their rights and duties to each other.

## ELEVENTH CLAIM FOR RELIEF
### (Injunctive Relief)

89.    Plaintiff incorporates all prior allegations as if fully set forth herein.

90.    Plaintiff will suffer immediate and irreparable harm if National Lease Purchasing and Garcia are permitted to continue renting out the Property to the tenants.

12

91.     As a result of National Lease Purchase's blatant disregard for the Agreement entered into with Plaintiff, Plaintiff is entitled to injunctive relief in the nature of a restraining order, preliminary and permanent injunction enjoining Garcia and/or National Lease Purchase from continuing to rent the Property to any and all tenants.

92.     Unless Garcia and/or National Lease Purchase is mandated to act as hereinafter requested, Plaintiff will suffer irreparable harm for which money damages will be inadequate.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.     For general and compensatory damages according to proof in excess of Fifteen Thousand and No/100 Dollars ($15,000.00).

2.     For punitive damages according to proof in excess of Fifteen Thousand and No/100 Dollars ($15,000.00).

3.     For declaratory relief pursuant to NRS 30.040 finding the Agreement between Plaintiff and National Lease Purchasing is voidable by Plaintiff based upon fraudulent inducement of the contract.

4.     For injunctive relief in the nature of a temporary restraining order and a preliminary and permanent injunction enjoining Garcia and/or National Lease Purchasing from renting the Property to any and all renters.

5.     For reasonable attorneys' fees and costs as provided for by law.

6.     For any further relief as the Court deems appropriate and necessary.

/ / /

/ / /

/ / /

/ / /

/ / /

JEPSEN & MCMENOMY PLLC
100 Vine Street
Reno, NV 89503
Phone: (775) 525-8850

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JEPSEN & MCMENOMY PLLC
100 Vine Street
Reno, NV 89503
Phone: (775) 525-8850

## **AFFIRMATION**

The undersigned affirms this document submitted for filing does not contain the Social

Security Number of any person.

DATED this 22nd day of November, 2022.

JEPSEN & McMENOMY, PLLC

By: _____
Jennifer M. McMenomy, Esq.
Nevada State Bar No. 14239
Kendra J. Jepsen, Esq.
Nevada State Bar No. 14065
100 Vine Street
Reno, Nevada 89503
Telephone: (775) 525-8850
*Attorney for Plaintiff*

14

**JEPSEN & MCMENOMY PLLC**
100 Vine Street
Reno, NV 89503
Phone: (775) 525-8850

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION**

STATE OF NEVADA          )
                         )ss:
COUNTY OF WASHOE         )

     ALEXXA GOODENOUGH, being first duly sworn, deposes and says under penalty of

perjury:

     That she is the Plaintiff named in the above-referenced matter and that she has read the

foregoing Complaint and knows the contents thereof; that the same is true of her own knowledge,

except as to those matters stated on information and belief and as to such matters, she believes them

to be true.

*Alexxa marie Goodenough*
_____
ALEXXA GOODENOUGH

On this 21st day of ___November___, in the year 2022, before me, a notary public, personally appeared ALEXXA GOODENOUGH personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to this instrument, and acknowledged that they executed it.

NOTARY SEAL

_____
(Signature of Notary Public)

Nathan Masdon
NOTARY PUBLIC
STATE OF NEVADA
Appt. No. 21-6351-02
Expires November 3, 2024

Notarial act performed by audio-video communication.

15

## **EXHIBIT INDEX**

| Exhibit No. | Document | Pages (Including Exhibit Tab) |
|---|---|---|
| 1 | Contract for Deed Lease Purchase Agreement | 11 |

Exhibit 4

Exhibit 4



**JEPSEN & MCMENOMY**

ATTORNEYS AT LAW

Kendra J. Jepsen, Partner
Jennifer M. McMenomy, Partner

Tenants of 5545 Corina Circle
5545 Corina Circle
Sun Valley, Nevada 89433

Dear Tenants:

This firm has been retained by Alexxa Goodenough, the owner of 5545 Corina Circle, Sun Valley, Nevada 89433 (the "Property"). This letter is to inform you that Ms. Goodenough is currently the deeded owner of the Property. Upon information and belief, you entered into a lease agreement with Mario Garcia and/or National Lease Purchase to rent the Property.

Ms. Goodenough is currently in litigation with National Lease Purchase and Mr. Garcia and is currently in the process of seeking a default judgment against him. As the rightful owner of the Property, Ms. Goodenough will require that you vacate the Property at your earliest convenience. This serves a notice under NRS 40.251 for you to vacate the Property. The owner has reached out and attempted contact with you and received no response. She has also taken note of the damages done the Property and pets on the Property that were not permitted.

You are entitled to reserve all claims regarding breach of contract against Mr. Garcia and National Lease Purchase.

If you have questions or concerns, please feel free to call us at (775)525-8850.

Sincerely,

JEPSEN & MCMENOMY, PLLC

Jennifer M. McMenomy, Esq.